(165 App. Div. 646)
INTERBORO BREWING CO., Inc., v. DOYLE et al. (No. 369/90.)

(Supreme Court, Appellate Division, Third Department. January 15, 1915.)

1. BILLS AND NOTES (§§ 337, 497*)—BONA FIDE HOLDER—NOTICE.
      Under Negotiable Instruments Law (Consol. Laws, c. 38) §§ 94–98, declaring that the title of one negotiating instruments is defective when he negotiates it in breach of faith, and that to constitute notice of a defect in the title the person to whom the instrument is negotiated must have had actual knowledge of the defect, or knowledge of facts that his action in taking the instruments amounted to bad faith, etc., a holder of a negotiable instrument, transferred to him by one guilty of breach of faith, must prove that he acquired title as holder in due course, and is chargeable with knowledge of facts discovered on inquiry, when the facts should lead to inquiry, and is not then protected as a bona fide holder, though surmise or suspicion is not sufficient to put him on inquiry, and though while acting in good faith he may have been negligent.
      [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 818, 856–863, 1448, 1675–1681, 1683–1687; Dec. Dig. §§ 337, 497.*]

2. BONDS (§ 99*)—BONA FIDE HOLDER—NOTICE.
      Where a pledgee of unmatured bonds, payable to bearer, was in possession of the bonds, and represented to third persons that he was the owner thereof, and the third persons were without notice of facts to put them on inquiry as to any defect in the title, the title of the third persons as pledgees in reliance on the representations was free from any claim of prior parties, under Negotiable Instruments Law, §§ 91–96, defining rights of holders of negotiable instruments.
      [Ed. Note.—For other cases, see Bonds, Cent. Dig. §§ 107, 108; Dec. Dig. § 99.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Judgment on Report of Referee.

Action by the Interboro Brewing Company against William F. Doyle and another, individually and as trustee. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Rudd, Wood & Molloy, of New York City (Henry P. Molloy, of New York City, of counsel), for appellant.

A. G. Patterson, of Walton, for respondents.

LYON, J. Prior to March 14, 1912, the New York & Brooklyn Brewing Company, being indebted to the defendant Doyle, delivered to him, as collateral security for the payment of such indebtedness, ten $1,000 bonds of the Ernest Ochs, a corporation of the city of New York. On March 14, 1912, the defendant Doyle, who was a director and the treasurer of the Metropolitan Dairy Company, of the city of Brooklyn, N. Y., being desirous of obtaining the sale and delivery to the said Dairy Company, by the patrons of the Colchester Creamery Company, of the county of Delaware, N. Y., of the milk made upon their farms, and as a necessary inducement to said patrons to make such sale and delivery, proposed to them that the deposit with James A. Robinson, of Walton, N. Y., who had been and then was acting as the representative of the said Doyle, and of said Dairy Company, and of Flugge, its president, in inducing said patrons to sell their milk to said Dairy Company, five of said bonds, of which he stated he was the owner, as collateral security, and as a guaranty to said patrons for the payment on the 15th day of each month for the milk delivered during the preceding month. This proposition was assented to by said patrons, and such deposit of said bonds was made on that day by said Doyle with said Robinson, in whose possession they have since been. Under such agreement the bonds were to remain as such guaranty and collateral security until such time as two-thirds of said patrons should consent to the release and return thereof. This consent has not been given, but has been asked and refused.

On June 12, 1912, the New York & Brooklyn Brewing Company, having reduced its indebtedness to said Doyle from $10,000 to $5,000, gave him a new note for the latter amount, and he returned to the Brewing Company the old note and five of said bonds; the remaining five bonds being retained by him as collateral security for the payment of the $5,000 note. The patrons of said creamery, relying upon such representations of said Doyle, and the security afforded by the pledge of said bonds so deposited with said Robinson, and without any information whatever that the New York & Brooklyn Brewing Company, or the plaintiff, or any person other than said Doyle, had, as pledgor or otherwise, any interest whatever in said bonds, sold and delivered the milk from their farms to said Dairy Company, at the Colchester station, which was operated by said Dairy Company, from April 1, 1912, until January 14, 1914, upon which day the indebtedness of said Dairy Company to said patrons for milk amounted to upwards of $4,500, no part of which has been paid.

Defendant Doyle ceased to be a director of said Metropolitan Dairy Company October 1, 1913. On January 14, 1914, the day before the bills for the November milk became payable, said Dairy Company was adjudged a bankrupt, for which a receiver, and later a trustee, were appointed. No claims against the Dairy Company have been filed by any of the patrons so delivering milk to the Colchester station, or demand of payment thereof made upon either said receiver or trustee, and while the evidence does not disclose whether there are assets of the Dairy Company, the answer of the defendant Robinson alleges that there are no assets whatever.

On April 4, 1914, the plaintiff, which by merger in January, 1913, of 'the New York & Brooklyn Brewing Company and the Consumers' Park Brewing Company, had acquired all the assets of both corporations, having made demand of said Robinson for the delivery to it of said bonds, which had been refused, the bonds then being advertised to be sold to pay said milk bills, instituted this action, demanding an accounting of defendant Doyle, the indebtedness to whom had been reduced to about $900, which had been tendered by the plaintiff to said Doyle, and demand made upon him for the surrender of said bonds, and also demanding a judgment declaring said five bonds so held by the defendant Robinson to be the property of the plaintiff, and that he be required to surrender the same to the plaintiff.

The foregoing facts are practically as stated in the report of the referee before whom the action was tried, who also found that from the time of making the pledge until after the bankruptcy of the Dairy Company, the relation of the defendant Robinson to said patrons was solely that of trustee of the express trust; that he was not at any time during said period the agent of said patrons, or with privity of relationship 'between him and them, except in so far as he was charged in his capacity as such trustee with the duty of possession of said bonds; that during such period he had no knowledge or information that said Doyle was not the owner of said bonds, nor that the plaintiff, or the New York & Brooklyn Brewing Company, claimed to have any interest in said bonds; nor was the fact that Doyle did not own the bonds brought to his notice in any manner sufficient to put him upon inquiry; and that his action in all respects was characterized by honesty and good faith.

As conclusions of law the referee found that said patrons were bona fide pledgees of said bonds, for value, before maturity, to guarantee the payment of sums unpaid for milk so sold and delivered, and without notice of the plaintiff's equities in the bonds, and dissolved the injunction pendente lite, restraining the sale of the bonds, and dismissed the action as to defendant Robinson, with costs. From the judgment entered upon the decision of the referee, this appeal has been taken.

A careful reading of the record convinces us that the findings and conclusions of the learned referee are fully justified by the evidence. The appellant concedes that the only legal questions involved in this case are whether the defendant Robinson, in his capacity of trustee, is the agent of the patrons, or of Doyle, and whether the patrons are innocent purchasers for value. The plaintiff claims that Robinson was the agent of the farmers, which was clearly disproved by the evidence,

and that he received sufficient notice to put him upon inquiry as to the nature of Doyle's possession of the bonds.

[1] Unquestionably the negotiating of the bonds by Doyle, in breach of faith, constituted a defect in his title thereto, and thereby placed upon the holders the burden to prove that they acquired the title as holders in due course. Negotiable Instruments Law, §§ 94–98. However, to constitute notice of a defect in the title to Doyle, the holders must have had actual knowledge of the defect, or knowledge of such facts that their action in taking the instrument amounted to bad faith. Negotiable Instruments Law, § 95.

If the facts known to the holders should have led them to inquire, and by inquiry they would have discovered the real situation, in a commercial sense they acted in bad faith, and the law will withhold from them the protection that it would otherwise extend. Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585.

"Mere surmise or suspicion is no longer sufficient to put a purchaser of negotiable paper upon inquiry. The facts or circumstances to put him upon inquiry must be such as to show dishonesty or bad faith on his part in refraining from making the inquiry." Hibbs v. Brown, 112 App. Div. 214, 98 N. Y. Supp. 353, affirmed 190 N. Y. 167, 82 N. E. 1108; Perth Amboy Mut. Loan Ass'n v. Chapman, 80 App. Div. 556, 81 N. Y. Supp. 38, affirmed 178 N. Y. 558, 70 N. E. 1104.

"The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail." Cheemer v. Pittsburgh, etc., R. R. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646.

[2] The bonds in question were payable to bearer, were not yet matured, were lawfully in the possession of Doyle, were accepted by the pledgees in good faith and for value, and in reliance upon the statement by Doyle that he was the owner thereof, and without sufficient notice of facts at any time to put either Robinson or the patrons upon inquiry as to any defect in title. The pledgees were therefore holders of the bonds in due course, free from any defect of title of prior parties, and free from any defenses available to prior parties among themselves. Negotiable Instrument Law, §§ 91–96.

No injustice will be done by affirming the judgment. Doyle having as to the plaintiff wrongfully converted the bonds, and having as to the patrons wrongfully induced them upon the faith of the pledge of the bonds, and his ownership of them, to give credit to the Metropolitan Dairy Company, should answer to the plaintiff for the bonds, which the evidence would indicate that he is able to do.

The judgment should be affirmed, with costs. All concur.